

Robert I. White, Robert L. Waters, Chamberlain & Hrdlicka, Houston, for plaintiff.

George Pain, Asst. U. S. Atty., Houston, Myron C. Baum, D. Wendell Barnett, Dept. of Justice, Washington, D. C., for defendant.

**Dr. Howard A. TOBIN et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. 69-H-497.**

United States District Court, S. D. Texas, Houston Division.

Jan. 19, 1971.

## MEMORANDUM OPINION

This suit involves a claim by plaintiff taxpayers for a refund of federal income taxes. Dr. Tobin seeks a refund of $562.12, paid for the year 1966, and Dr. Reeves submits a claim for $873.93, paid for the years 1966 and 1967. During the period in controversy, both taxpayers were resident physicians in otolaryngology participating in the Affiliated Hospitals Residency Program of the Baylor University College of Medicine. As a result of such participation, each received payments of at least $300 per month during this period. In filing his amended tax return, each sought to exclude from gross income $3600 per year as a "fellowship" or "scholarship" payment within the meaning of § 117 of the Internal Revenue Code of 1954. The

present suit is the result of the disallowance of these claims.

The Internal Revenue Regulations provide that "amounts paid as compensation for services or primarily for the benefit of grantor" cannot be considered as scholarship or fellowship grants for the purpose of § 117. The Regulations impose a caveat, however, that

"* * * amounts paid or allowed to, or on behalf, of an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant." 26 C.F.R. § 1.117–4.

The four-year Affiliated Hospitals Residency Program provides for the recently licensed physician an opportunity for specialization in a particular area of medicine that is comparable to graduate school training. Members of the program are rotated through several hospitals during their years of residency. Plaintiffs ask the court to construe their activity in these hospitals as serving primarily their own educational purposes, whereas the Government emphasizes the patient-care benefits which the hospitals realize from the work of program participants.

Initially, we must discard the facile view that plaintiffs' activities can be neatly classified as being of exclusive, or near-exclusive, utility to one particular party. Plaintiffs are trained professionals, and it is inconceivable that they would agreed to a "compensation" of from $4300 to $7400 per year unless they were also deriving substantial educational benefits. On the other hand, plaintiffs' active participation in the day-to-day affairs of large hospitals, one of whom regards residents' services as essential to maintenance of full operative capacity, refutes the contention that plaintiffs make no significant contribution to the operation of these institutions.

The issue has been somewhat illuminated by the Supreme Court's decision that amounts received from an employer by engineers during leave for post-graduate study represent "compensation" rather than "scholarships" or "fellowships" under § 117. Bingler v. Johnson, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). In the course of its opinion, the Court approved the interpretation of § 117 supplied by the Internal Revenue Regulations and noted that it comports

"with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Johnson, *supra*, at 751, 89 S.Ct. at 1445.

When "no strings" is added to the definition of "scholarship" and "fellowship," it becomes clear that our plaintiffs cannot qualify as scholarship or fellowship recipients.

Plaintiffs' duties at the participating hospitals were similar to those performed by salaried staff physicians. Such duties included patient care, prescription of drugs, and preparation of patient histories. And although, with respect to surgery, the resident seldom has the total, exclusive responsibility, he performs most of the cutting. The chief of staff at the Veterans Administration Hospital testified that residents are required to staff the emergency room and that they are assigned certain weekend duties at the hospital. And the chairman of Baylor's department of otolaryngolo-

gy in 1966 testified somewhat equivocally about whether the Ben Taub General Hospital could have operated at full capacity without its residents:

"Q. Could the Ben Taub General Hospital be operated at its same level quantitatively and qualitatively without the residents as it does with the residents?

"A. I don't think it could today. I think it could, yes. I think it's possible.

"Q. I am talking about 1966. Could it have operated at its same level?

"A. It could have under certain circumstances.

"Q. Without the residents, and you have got the same number of patients who get the same quality of care?

"A. It's possible. I did not say probable. It's possible because this has been done in some other institutions where doctors take calls twenty-four hours a day."

In several material respects, plaintiffs were treated more as "employees" than as "students." Their salaries were paid by the hospital to which they were assigned at any particular time. Each plaintiff received a two week paid vacation each year and paid sick leave, and each was eligible to participate in the employees' group life and group health insurance programs. Furthermore, a resident's salary was dependent upon his length of service.

If these facts lend support to classification of plaintiffs as "employees," other facts make it difficult to label them as "students." Plaintiffs were not, during the period in controversy, registered as students at Baylor, nor did they pay tuition to any school. In addition, they were not candidates for any degree.

Two matters raised by plaintiffs merit closer attention. Plaintiffs emphasize that a resident at no time has full responsibility for the treatment of patients. In determining whether to clas-sify a resident as an employee, however, we need not consider the issue of the resident's ultimate accountability. Certainly, the overwhelming number of "employees" who pay income taxes in the United States are subject to some degree of supervision.

Plaintiffs also make much of the resident's three month elective period, during which the resident is engaged in practically no patient-care activities at any hospital, but is nevertheless continued on full stipend. We are of the view that this elective period ought to be construed as a kind of sabbatical leave, both the culmination of the resident's four year program, and a part of that "quid" (in addition to its payments to the resident) which the hospital offers in exchange for the resident's "quo." This three month period in no way detracts from the value of the services which the resident has already performed.

Finally, we note that several recent decisions from other courts confirm our finding that plaintiffs here received compensation for services. In Wertzberger v. United States, 315 F.Supp. 34 (W.D.Mo.1970), the court held that amounts paid to a resident surgeon at the University of Kansas Medical Center did not qualify as "scholarship" or "fellowship" and therefore could not be excluded from gross income under § 117. In Kwass v. United States, 315 F.Supp. 186 (E.D.Mich.1970), the court reached a similar result with respect to a resident psychiatrist at the University of Michigan Hospital. And in Quast v. United States, 428 F.2d 750 (8th Cir. 1970), the Eighth Circuit upheld a lower court ruling that treated the payments as taxable income, even though Dr. Quast, unlike our plaintiffs, was a candidate for a degree. We conclude therefore that, not only is there considerable authority for our determination that the payments in controversy here cannot be classified as "scholarship" or "fellowship," and hence fully taxable as gross income, but that, indeed, this decision is virtually compelled by the clear thrust of recent case law.

Accordingly, it is adjudged that defendant has correctly assessed and collected the sum of $562.12 as federal income taxes due from plaintiff Howard A. Tobin and wife for the year 1966, and the sum of $873.93 as federal income taxes due from plaintiff Hugh M. Reeves and wife for the years 1966 and 1967.

Defendant will submit to the court an appropriate judgment not inconsistent with this opinion.

Clerk will file this Memorandum Opinion and provide counsel with true copies.