Phillip L. **PARR** and Barbara M. Parr,
Plaintiffs-Appellants,

v.

**UNITED STATES** of America,
Defendant-Appellee.

James David **EMERSON** and Nancy M.
Emerson, Plaintiffs-Appellants,

v.

**UNITED STATES** of America,
Defendant-Appellee.

No. 72–2231
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1972.

Thomas M. Donahoo, John W. Donahoo, Jacksonville, Fla., for plaintiffs-appellants.

William Stafford, U. S. Atty., Clinton Ashmore, Asst. U. S. Atty., Tallahassee, Fla., Rodger M. Moore, Atty., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

JOHN R. BROWN, Chief Judge:

Doctors Parr and Emerson seek refund of Federal Income Taxes paid on sums received from the University of Florida College of Medicine during the taxable year 1968. Taxpayers, surgical residents at that institution during that year, claim that amounts received up to $3,600.00 were excludable from gross income as fellowship grants under § 117 of the Internal Revenue Code of 1954.[1] In the refund suit the Government moved for summary judgment at the close of Plaintiff's case. Perhaps with some despair and certainly not with any real hope that this Millenium would ever arrive the District Judge stated " * * * I think once and for all the appellate courts ought to rid the court system of these numerous law suits, most of which cases resulted in findings against Plaintiffs in the same or very similar circumstances, and I am going to grant the motion." And that is what he did.[2]

Both Appellants were medical doctors at the time they entered the residency program. Doctor Parr was a resident in orthopedic surgery, and Doctor Emerson was a resident in general surgery. Admission to the residency program was on the basis of academic achievement. Payments were not subject to negotiation, and it is clear that the hospital facilities[3] were operated primarily for the purpose of training doctors in advanced medical skills. It is likewise clear that Taxpayers attended these institutions for the purpose of advancing their medical knowledge, that is, to become specialists in their respective fields. These facts, however, do not shake us in our conclusion that the overwhelming case law and common sense stand between Taxpayers and the Federal Treasury.

Taxpayer's proof of the purposes for which the hospital facilities are operated avails them nothing. The purposes for which the facilities are operated is relevant only insofar as it might possibly shade the purpose for which payments are made to Taxpayers. It is clear that Taxpayers were compensated for the services they performed. Each of them made rounds, saw patients, took histories, proposed diagnosis, gave pre and post-operative care, and assisted in and performed surgery under the supervision of faculty members. The testimony was undisputed—in fact it was offered by Taxpayers—that these facilities would have had to hire other personnel to undertake these duties had they not been performed by Doctors Emerson and Parr. The recent opinion of Judge Field

---

1. Internal Revenue Code of 1954 (26 U. S.C.) : § 117.
   "Scholarships and fellowship grants
   (a) General rule.—In the case of an individual, gross income does not include—
   (1) Any amount received—
   (A) as a scholarship at an educational institution (as defined in section 151 (e) (4)), or
   (B) as a fellowship grant, including the value of contributed services and accommodations; * * *"
   Since Taxpayers were not candidates for degrees the amount received as a fellowship excludable from gross income was limited by statute to $3,600.00 per year. § 117(b) (2) (B), Int.Rev. Code, *supra.*
   Taxpayers' wives are parties to this action since each filed joint tax returns.

2. The cases, filed separately, were consolidated on the motions of Taxpayers.

3. Doctor Emerson was not present at the trial. His absence was excused because he and his wife were out of the Country while Doctor Emerson fulfilled his military obligation. The parties stipulated that the law would bear the same on each of the Appellant's claims.

4. Doctor Parr was a first year resident in orthopedic surgery, and was paid $4,171.72 by Shands Teaching Hospital, which is a branch of the J. Hillis Miller Health Center of the University of Florida. Doctor Emerson was a second year resident in general surgery, and was paid $5,557.59 by the University of Florida Hospital College of Medicine. Both of these institutions are referral hospitals, receiving more applications for patient admission than they can accept, and accepting patients largely on the basis of their educational value to the "students".

for the Fourth Circuit in Hembree v. United States, 4 Cir., 464 F.2d 1262 [1972], on nearly identical facts, squarely holds that the primary purpose for which the medical institution is operated is not significant. The primary purpose standard of the regulations [4] relates to the purpose for which the payments are made. The Court there held that a showing that the Doctor performed services as part of his internship duties which were necessary to the operation of the hospital and would have to be performed by others were the Taxpayers to be excused from their performance, demonstrated that the relationship between hospital and "student" had all the indicia of an employer-employee relationship.

■■ The hospitals here in many respects treated Appellants as em-

ployees [5] and we think that the evidence demonstrates beyond dispute that for the purposes of Federal Income Tax liability they were employees.

■■ As the Court in *Hembree, supra,* points out the Supreme Court's decision in Bingler v. Johnson, 1969, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 provides an additional basis for our holding apart from the "primary purpose" concept. The Supreme Court there adopted a common sense approach to the definition of scholarships and fellowships characterizing them as "relatively disinterested, 'no-strings' educational grants." We hold that as a matter of law there were strings attached to the grants in the case before us, which exceeded the incidental duties which are compatible with characterization of a stipend as a scholarship or fellowship.[6]

4. The pertinent Treasury regulation setting out the "primary purpose test" is Treasury regulation § 1.117 which provides,

"§ 1.117–4 Items not considered as a scholarship or fellowship grants.

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

\*    \*    \*    \*    \*

(c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for

the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant."

5. The University kept "employee" payroll records on Taxpayers, their salaries increased each year, and they were provided a number of "fringe" benefits customarily received by employees. That the manner in which the employer treated the payments is some evidence of their nature is the clear implication of United States v. Webb, 1970, 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207.

6. The Taxpayers rely heavily on Treasury Regulations § 1.117–4(c)(2), which provides that "Neither the fact that the recipient is required to furnish reports of his progress to Grantor nor the fact that the results of his studies or research may be of some incidental benefit to the Grantor shall of itself be considered to destroy the essential character of such amount as a scholarship or fellowship grant." But, as the Court in *Johnson, supra,* noted, 394 U.S. at 758, n. 32, 90 S.Ct. at 1449, n. 32, that regulation was added "to impose tax on bargained-for arrangements that do not create an employer-employee relationship, as, for example, in the case of an independent contractor." In sum, Section 1.117–4(c)(2) does not supersede the provisions of

We do not attempt to dictate a per se rule holding that all advanced medical personnel are employees and that all payments to them are subject to taxation. However, we sympathize with the District Court's lamentation that these facts, or facts nearly identical, have been litigated so often that one may wonder whether this is wise or what good it can do. See Bingler v. Johnson, *supra*; Werzberger v. United States, 8 Cir., 1971, 441 F.2d 1166; Quast v. United States, 8 Cir., 1970, 428 F.2d 750; Rundell v. Commissioner, 5 Cir., 1972, 455 F.2d 639; Anderson v. Commissioner, 1970, 54 T.C. 1547, and numerous other cases. But hope springs eternal. And the heartbeat—the vital life sign to doctors young and old—of hope is the question begging structure of the regulations: Payments made for the "primary purpose—to further the education and training of the recipient" are fellowship grants *unless*—and the unless is a big unless—the amount provided for *such* purpose represents compensation. (Note 4, *supra*). Which is to say, this is not the last word, only the latest.

Summary judgment was eminently proper.

Affirmed.

Section 1.117–4(c)(1), which, as noted, declares that payments for services are not excludable as fellowships or scholarships.