LEONARD JAY LEVINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levine v. Commissioner
Docket No. 4114-75.
United States Tax Court
T.C. Memo 1977-61; 1977 Tax Ct. Memo LEXIS 382; 36 T.C.M. (CCH) 264; T.C.M. (RIA) 770061; March 10, 1977, Filed Stuart B. Kalb, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the calendar year 1972 in the amount of $899.86. The only matter now in dispute is whether petitioner is entitled to exclude from his gross income, as a fellowship under section 117, I.R.C. 1954, the amount of $3,600. All of the facts have been stipulated. Petitioner Leonard Jay Levine resided in Orlando, Florida, at the time his petition in this case was filed. He filed his 1972 Federal income tax return with the Office of the Director, Internal Revenue Service Center, Southeast Region, Chamblee, Georgia.
Petitioner graduated from medical school in 1970 and completed an intership in December 1971. In January, 1972, he entered *383 a four-year residency program in general surgery at Orange Memorial Hospital in Orlando, Florida. The hospital is the largest private hospital in the state of Florida, and is devoted to providing the best possible medical care to its patients. During 1972, the hospital's department of surgery had a total of 55 staff physicians and 14 residents. Petitioner was licensed to practice medicine in Florida at the time he entered the residency program at the hospital. During 1972, he completed the first year of his four-year residency. He was generally expected to be on duty at the hospital from 7:00 a.m. to 6:00 p.m., Monday through Saturday. In addition, he was required to be on call at the hospital every third night and certain weekend days. During normal duty hours, petitioner performed services in the areas of general surgery, neurologic surgery, thoracic surgery, and other surgical subspecialties. His activities included admitting, interviewing and examining patients; participating in evaluations and proposing diagnoses; assisting in giving treatment; making rounds; prescribing and administering drugs and medications; handling emergency room treatment; ordering special reports, *384 such as x-rays; and making reports, including operating room reports. In addition, petitioner participated in approximately 250 surgical operations per year. In performing his duties petitioner was supervised by a staff physician, but his level of responsibility for managing his patients' care varied with the difficulty of the case and increased as he became more competent. While on call at night or on weekends, petitioner stayed at the hospital to take care of any problems which arose concerning the emergency room, inpatients or outpatients; he treated from 10 to 30 patients while he was on call at any one time. Depending on the nature and acuteness of the problem, petitioner might summon the attending staff physician or undertake to treat the patient himself. Petitioner's duties with respect to patient care consumed approximately 80-90 hours per week. In addition, he devoted 10-20 hours per week to lectures, staff meetings, preparation of research papers, attendance at therapy sessions, and travel to other hospitals for training activities. During the summer months, petitioner spent 15-20 hours instructing medical students in a summer internship program at the hospital. *385 During 1972, the hospital paid stipends ranging from $9,600 for first year residents to $11,400 for fourth year residents. The amount of the stipend depended solely on the level of residents' experience, and did not vary according to financial need. The hospital withheld Federal income taxes and FICA taxes and furnished residents with Wage and Tax Statements (Form W-2). Petitioner received $9,363.17 from the hospital as a first year resident during 1972. In addition to their stipends, residents (including petitioner) received two-week paid vacations, malpractice insurance, free uniforms and the laundering thereof, group life insurance (after two years' service), discounts on drugs, discounts for outpatient services, paid leave for military duty, paid sick leave, paid jury duty leave and paid educational leave. Petitioner had no obligation to render any service to the hospital after the completion of his residency. On his 1972 Federal income tax return, petitioner excluded $3,600 from his gross income as a fellowship excludable under section 117 at the rate of $300 per month. The Commissioner disallowed the exclusion in its entirety. Section 117, I.R.C. 1954, allows an *386 exclusion from gross income for amounts received as a "scholarship at an educational organization" or as a "fellowship grant". In the case of recipients who are not candidates for degrees, the exclusion is limited to $300 per month. Petitioner, like many other resident physicians, claims that his residency stipend is a fellowship within the meaning of section 117. We hold, however, that the Commissioner correctly disallowed the claimed exclusion. Although the term "fellowship" is not defined in the statute, the general rule is clear: a payment given in exchange for services is neither a scholarship nor a fellowship, but taxable compensation. Parr v. United States,469 F. 2d 1156 (C.A. 5); Hembree v. United States,464 F. 2d 1262 (C.A. 4); David M. Brubakken,67 T.C. 249; Steven Michael Weinberg,64 T.C. 771; Elmer L. Reese, Jr.,45 T.C. 407, affirmed per curiam 373 F. 2d 742 (C.A. 4); section 1.117-4(c), Income Tax Regs. The validity of the regulations setting forth this test has been sustained by the Supreme Court. Bingler v. Johnson,394 U.S. 741, 751. Nothing *387 in petitioner's case distinguishes him from the multitude of residents and interns whose stipends have heretofore been held to be taxable compensation. Petitioner performed a wide range of valuable services for the hospital. Among other things, he interviewed patients and prepared patient histories; made rounds; administered treatment and prescribed drugs; participated in approximately 250 surgical operations during the year; and served night and weekend duty. He was expected to be at the hospital at regularly scheduled daytime hours six days a week, and also certain nights and weekends. Specified duty hours and the performance of valuable services are strong indications of an employee relationship. Steven Michael Weinberg,supra,64 T.C. at 778; Frederick Fisher,56 T.C. 1201, 1213; Sheldon A. E. Rosenthal,63 T.C. 454, 459-460; Stephen L. Zolnay,49 T.C. 389, 397-398. Compare George L. Bailey,60 T.C. 447. Furthermore, the hospital treated his stipend as "pay", withholding Federal income taxes and deducting FICA taxes. And petitioner received numerous valuable fringe benefits, including *388 malpractice insurance; paid sick, military, jury and educational leave; discounts on drugs and outpatient services; and, after two years' service, group life insurance. These factors are indicative of employee status. Steven Michael Weinberg,supra,64 T.C. at 778; Aloysius J. Proskey,51 T.C. 918, 924; but see Louis C. Vaccaro,58 T.C. 721, 730. Finally, it is persuasive of petitioner's employee standing that his stipend depended on his level of training rather than his financial need, and was substantial in amount. Sheldon A. E. Rosenthal,supra,63 T.C. at 460; Stephen L. Zolnay,supra,49 T.C. at 398; cf. Robert Henry Steiman,56 T.C. 1350, 1355. Decision will be entered for the respondent.*