439 F.Supp. 440 (1977)
Theodore KRUPIN and Barbara R. Krupin, his wife, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 76-1054 C (A).
United States District Court, E. D. Missouri, E. D.
September 7, 1977.
*441 Richard S. Bender, Clayton, Mo., for plaintiffs.
Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
This matter is before the Court on the cross motions of plaintiffs and defendant for summary judgment.
Plaintiffs, Theodore Krupin and Barbara Krupin, his wife, brought this action to recover a refund of federal income tax and interest which was paid by them in full satisfaction of an assessment made against plaintiffs for the tax year 1973. Dr. Barbara Krupin is a plaintiff in this suit only because she and her husband, Dr. Theodore Krupin, filed a joint income tax return upon which this suit is based. Hereinafter the term "plaintiff" or "Dr. Krupin" refers only to Theodore Krupin.
*442 Jurisdiction of this Court exists pursuant to 28 U.S.C. 1346(a)(1).
From the pleadings, pretrial briefs of the parties, stipulated facts, exhibits agreed upon as admissible at trial, answers to interrogatories, admissions, depositions of Dr. Krupin and Dr. Becker, and affidavit of Dr. Krupin, the following facts have been derived: Plaintiff, Theodore Krupin, is a medical doctor, having received his medical degree in 1968. Following an internship and clinical training in ophthalmology, he served as an ophthalmologist in the United States Air Force from September 1970 until September 1972.
In December 1971, Dr. Krupin applied for a Special Research Fellowship from the National Institutes of Health (hereinafter referred to as NIH), an agency of the United States Department of Health, Education and Welfare, to continue his research in ophthalmology. Pursuant to the directives of NIH, plaintiff was required to arrange for an appropriate sponsoring institution and individual. Dr. Krupin made arrangements at Washington University School of Medicine, St. Louis, Missouri, to perform his research, and for Dr. Bernard Becker, head of the Ophthalmology Department there, to serve as his individual sponsor.
On May 1, 1972, plaintiff was awarded a $15,500 Special Research Fellowship by the National Eye Institute, the awarding unit of NIH. The award was for a one-year period which began on October 1, 1972. Plaintiff performed the research work funded by his fellowship during the period from October 1, 1972, through September 30, 1973.
On their joint federal income tax return for the calendar year 1973, plaintiffs excluded from gross income $2,700.00 of the fellowship stipend received by Dr. Krupin during the period from January through September, 1973, on the ground that the sum was excludable as a fellowship grant under IRC § 117. Upon audit of the return, the Internal Revenue Service determined that the $2,700.00 should have been included in gross income and assessed a deficiency of $908.31 against the plaintiffs, consisting of $805.04 in taxes and $103.27 in interest. The plaintiffs paid the additional tax plus interest on February 24, 1976, and timely filed a claim for refund. Thereafter Dr. Krupin instituted this action for recovery of the tax.
The burden of proof in an action to refund taxes is upon the taxpayer. Plaintiff must prove error in the Internal Revenue Service's determination plus he must prove his correct tax liability. United States v. Janis, 428 U.S. 433, 440-41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).
There is no dispute as to the facts. The merits of this case turn on whether the NIH fellowship is subject to partial exclusion under IRC § 117. The parties do not contend otherwise. The terms and circumstances surrounding the fellowship have been established primarily through the guidelines created by NIH for the award of a fellowship grant, and also by the conduct of Dr. Krupin's research.
Rule 56 of the Federal Rules of Civil Procedure considers summary judgment and provides in part:
"(c) Motion and Proceedings Thereon. * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
According to established principle, once a motion for summary judgment is made, the Court examines the evidence, not to decide issues of fact which may be presented, but rather to determine if any real issue exists. Doza v. American National Ins. Co., 314 F.2d 230, 232 (8th Cir. 1963). As interpreted by the courts, Rule 56 places on the moving party "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 *443 (1970); Jacobson v. Maryland Casualty Co., 336 F.2d 72, 84 (8th Cir.) cert. denied 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965). Summary judgment is clearly available in actions involving the application of IRC § 117. Logan v. United States, 518 F.2d 143 (6th Cir. 1975); Parr v. United States, 469 F.2d 1156 (5th Cir. 1972).
The case before the Court is one wherein summary judgment may properly be granted in favor of the plaintiff since no genuine issue of any material fact exists between the parties.
IRC § 61 provides that unless otherwise excluded by law, gross income includes all income from whatever source derived. Subject to certain limitations, IRC § 117 allows for an exclusion from gross income of any amount received as a scholarship or fellowship grant. Section 117(b)(2) pertains to individuals who are not candidates for degrees and provides for a fellowship exclusion subject to two limitations. First, the grantor must be an organization listed in section 117(b)(2)(A). The grantor herein, the National Eye Institute of NIH, qualifies as an agency of the United States. IRC § 117(B)(2)(A)(iv). Second, the amount which can be excluded is limited to an amount equal to $300.00 times the number of months for which the recipient received amounts under the fellowship during the tax year. Dr. Krupin received his fellowship for nine months during the 1973 tax year and properly sought to exclude only $2,700.00 of the fellowship monies he received in that year.
The resolution of this case turns on whether the grant received by Dr. Krupin is truly a fellowship as required by section 117 or disguised compensation as the government so contends. In Reese v. Commissioner, 45 T.C. 407, 413, the court stated:
"A proper reading of the statute requires that before the exclusion comes into play there must be a determination that the payment sought to be excluded has the normal characteristics associated with the term `scholarship'." (Aff'd 373 F.2d 742 (4th Cir. 1967).
The term "fellowship" is defined in Treas. Reg. § 1.117-3(c) which provides:
"A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research."
In Bingler v. Johnson, 394 U.S. 741, 751, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969), the Supreme Court approved of this definition stating:
"[T]he definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of `scholarships' and `fellowships' as relatively disinterested, `no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients."
A grant does not qualify where the grantee is an employee of the grantor and the grant represents "compensation for past, present, or future employment services," or where the grantee in his studies and research is found to be under excessive control or supervision by the grantor. Treas.Reg. § 1.117-4(c)(1). Further, a grant does not qualify for exclusion where the research and studies conducted under the grant inure primarily for the benefit of the grantor. Treas.Reg. § 1.117-4(c)(2). The constitutional validity of Regulation § 1.117-4(c) was upheld in Bingler v. Johnson, supra, 757-58, 89 S.Ct. at 1448-49, wherein it was stated:
"The thrust of the provision dealing with compensation is that bargained-for payments, given only as a `quo' in return for the `quid' of services rendered whether past, present, or futureshould not be excludable from income as `scholarship' funds."
The National Eye Institute was established "for the conduct and support of research for new treatment and cures and training relating to blinding eye diseases and visual disorders * * * 42 U.S.C. § 289i (1968). In fulfillment of this purpose, the Institute is statutorily directed to "collect and make available through publications and other appropriate means, information as to, and the practical application *444 of, such research * * *." 42 U.S.C. § 241. The primary purpose standard as established in Treas.Reg. 1.117-4(c)(2) relates to the purpose for which the payments are made, not to the purpose of the grantor. Parr v. United States, 469 F.2d 1156, 1158 (5th Cir. 1972).
The government contends that the stipend received by Dr. Krupin constitutes compensation and that the primary purpose of the grant was to benefit the grantor in producing a research product. The Court rejects these contentions. The administrative guidelines established for NIH fellowships provide:
"Research fellowships are awarded by the National Institutes of Health to promote training for research in health and health related areas * * *.
"Special Fellowships offer opportunities to scientists, research clinicians * * to broaden their scientific background, undertake basic and applied studies which strengthen research, skills, or enlarge their command on an allied research field through interdisciplinary studies."
(Joint Exhibit F, National Institutes of Health, Research Fellowships Program Administrative Guide, p. 1 (1972.)
The NIH has established these fellowships for the benefit of the grantee, and specifically provides that the grantee is not an employee of NIH nor is he to perform services for the institute. Joint Exhibit F, at 12. The manner in which payments are treated by the grantor is relevant in determining whether exclusion under section 117 is appropriate. Woddail v. Commissioner of Internal Revenue, 321 F.2d 721, 724 (10th Cir. 1963).
The government contends that the fact that Dr. Krupin had competed with other applicants for the fellowship and that grant recipients are required to pursue their research training on a full time basis, are indicia that the NIH was bargaining for research services and a research product. These considerations are, however, not probative of the issue at hand. Fellowship grants can be the subject of competition much like employment. It is in the best interest of the NIH, indeed it is incumbent upon its governing officials, to see that the funds are invested in the best talent available. The full time research requirement serves only to insure that the funds are properly spent. See Vaccaro v. Commissioner, 58 T.C. 721, 729 (1972).
Additionally, it should be noted that no income tax or social security benefits were withheld from Dr. Krupin's stipend. The withholding of taxes from the recipient's payments has been held to be indicative of employee status. Turem v. Commissioner, 54 T.C. 1494, 1507 (1970). Dr. Krupin received no fringe or employee benefits from Washington University or NIH, such as hospitalization or life insurance, or medical malpractice insurance. The presence of employee benefits were considered relevant in denying exclusion in Wertzberger v. United States, 315 F.Supp. 34, 36 (W.D.Mo.) aff'd 441 F.2d 1166 (8th Cir. 1971).
Dr. Krupin's research was performed on an independent basis. Dr. Krupin received no direct supervision from Dr. Becker or from NIH. The plaintiff did not submit progress reports to NIH, nor was his work reviewed by them. A requirement of periodic progress reports is indicative of an employer-employee relationship. Littman v. Commissioner, 42 T.C. 503, 510 (1964).
Plaintiff's action herein is quite similar to the case presented in Bieberdorf v. Commissioner, 60 T.C. 114 (1973). In Bieberdorf, stipends from NIH received by the taxpayer for training in specialized medicine were partially excludable under section 117. The Tax Court's decision was based on the following factors: First, the taxpayer spent less than twenty-five percent of his time performing clinical services for the hospital; second, he was not required to maintain regular hospital hours; third, there was no requirement for future employment; fourth, the doctor was free to perform research of his own choice which tended to benefit the academic community as a whole.
In the action at bar, Dr. Krupin was limited by the terms of the NIH fellowship in spending no more than ten percent *445 of his time in teaching. Dr. Krupin's teaching services consisted of no more than informing other researchers at Washington University of his experiments and the theories and techniques involved therein. Dr. Krupin maintained no regular class hours and performed only a negligible amount of patient care. Further, while the plaintiff did accept a position at Washington University after the termination of his fellowship, the evidence in this case clearly shows that Dr. Krupin was not in any way obligated to such employment. The plaintiff was under no contractual obligation to accept employment with Washington University or the NIH upon the completion of his training program. Finally, it is to be noted that Dr. Krupin's research was, by his own statement, of no practical application. The topic itself was closely related to previous research conducted by Dr. Krupin and served only to aid in the progress of science. Dr. Krupin chose the topic himself, and freely deviated from his designated research into other areas when he was faced with delays in procuring equipment. The findings of his research provided no more specific benefit to NIH than to any other medical institution or researcher having access to the plaintiff's published results. The benefits of Dr. Krupin's work accrued to the national academic community rather than the grantor. See also, Vaccaro v. Commissioner, 58 T.C. 721, 729 (1972).
The only significant distinction between the case at bar and the decision in Bieberdorf is that the NIH reserved patent and copyright privileges in respect to anything created under its grants. Additionally, the terms of the NIH grant requires that any publication of the results of the work performed under the fellowship must expressly acknowledge NIH as a source of funds for the project. The government forcefully asserts that these privileges reserved by NIH indicate that a guid pro quo was thereby exchanged.
The Court, however, does not consider these conditions to be dispositive of the fellowshipcompensation issue presented herein. Dr. Krupin was not obligated to publish the results of his studies. While being free to publish, Dr. Krupin was required to acknowledge NIH as a source of funds. Dr. Krupin published two articles as a result of his studies both of which contained the required acknowledgement. The acknowledgement produced only an incidental benefit to the NIH, which is not inconsistent with an exclusion under section 117. Treas.Reg. § 1.117-4(c)(2).
The acquisition of a copyright and/or a patent is also optional with the grantee of an NIH fellowship. Dr. Krupin did not seek to obtain a copyright for his articles. Further, it was anticipated from the beginning of his project that no patentable item would be produced. The copyright and patent privileges retained herein provide at best only a speculative benefit to the grantor, insufficient to deny a section 117 exclusion. The reservation of copyright and patent privileges with respect to the work product of funded research has been held not to preclude the availability of a section 117 exclusion. Commissioner v. Faloona, ¶ 75,040 P-H Memo TC.
In accordance with this memorandum opinion, it is hereby ordered and adjudged that plaintiffs' motion for summary judgment is sustained, and the defendant's motion for summary judgment is denied, and that judgment shall be entered for plaintiffs in the amount of $908.31, together with statutory interest thereon from February 24, 1976.