Palmer F. MEEK and Martha A. Meek, his wife, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 77–2441.

United States Court of Appeals, Ninth Circuit.

Nov. 14, 1979.

John D. Lyons, Jr., Robbins, Green, O'Grady & Abbuhl, Phoenix, Ariz., for plaintiff-appellant.

James A. Riedy, Washington, D. C., argued for defendant-appellee; M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., on the brief.

Before SNEED and HUG, Circuit Judges, and ZIRPOLI *, District Judge.

SNEED, Circuit Judge:

This is an appeal from the United States District Court for the District of Arizona. Taxpayer-appellant[1] sought to exclude from his income $1,800 of the payments received from the Maricopa County General Hospital while a medical intern, contending that the funds were excludable from gross income as a fellowship grant pursuant to I.R.C. § 117. The Commissioner disallowed the exclusion, and after the Internal Revenue Service denied a claim for a refund, taxpayer-appellant filed a complaint in district court. The district court granted the government's motion for summary judgment and dismissed the action on the grounds that the record was complete and that the facts clearly entitled the government to judgment as a matter of law. Taxpayer appeals. Jurisdiction is conferred on this court by 28 U.S.C. § 1291. We affirm.

## I. FACTS

Appellant Dr. Meek received a medical degree from the University of Kansas School of Medicine in 1971 and served as a medical intern at the Maricopa County General Hospital (Hospital) in Phoenix, Arizona, from July 1, 1971 through June 31, 1972, for which he received $9,526.40 from the Hospital.

Dr. Meek was not a candidate for a degree while participating in the Hospital's

---

\* Honorable Alfonso J. Zirpoli, Senior United States District Judge for the Northern District of California, sitting by designation.

1. References to "appellant" are to Dr. Meek. Martha Meek is a party solely because she filed a joint tax return with her husband.

internship program. Satisfactory completion of an internship program was a requisite to certification by the National Board of Medical Examiners, and completion of an approved internship program was required in order to obtain a license as a medical doctor from the State of Arizona.

The Hospital, an exempt organization within the meaning of section 501(c)(3) of the Internal Revenue Code of 1954, is a 496–bed facility maintained for the care and treatment of indigent Maricopa County residents. Its objectives are to provide the best patient care and to engage in teaching and research. Part of the charge to a patient billed for a room includes the overhead cost of the interns' services.

Dr. Meek spent approximately eighty hours during a typical week at the Hospital, and his internship consisted of rotating duty in several departments within the Hospital. These rotations included the emergency room (two months), general medical ward (six months), neurology-alcohol detoxification ward (two months), cardiology (one month), and gastroenterology (one month). During emergency room rotation, Dr. Meek's work week approached 100 hours and he examined an average of two or three patients an hour. His responsibilities during that period included taking medical histories, making physical examinations, and administering treatment either on his own initiative or after consultation with a staff physician or specialty resident.

Dr. Meek's responsibilities during the general medical ward and the neurology-detoxification rotations were similar. He performed physical examinations, recorded medical histories, presented patients to attending or staff physicians, wrote orders for treatment and diagnostic tests, and developed plans for post-hospitalization care. He also performed procedures such as spinal taps and bone marrow aspirations, initially under close supervision, and more independently with the development of competence. In addition, Dr. Meek wrote prescriptions which could be filled without physician approval at the Hospital pharmacy. During the cardiology and gastroenterology rota-

tions, Dr. Meek examined patients with a resident and recorded medical histories.

Dr. Meek signed a contract with the Hospital in which he agreed to perform his duties satisfactorily, to abide by the Hospital rules, to register to practice medicine as required by state law, and not to engage in any outside remunerative work. The Hospital agreed to pay Dr. Meek a stipend of $9,526.40 and to provide his uniforms, laundry service, two weeks' vacation and professional liability insurance. In addition to the benefits set forth in the contract, Dr. Meek received free meals and free parking. Staff doctors and other employees, however, received benefits that Dr. Meek did not. The amount of the stipend did not depend upon Dr. Meek's financial need. Payments to first year residents were greater than those to interns because residents contributed more to patient care.

Both the contract and the Director of Medical Education at the Hospital identified the primary purpose of the internship program to be the education of interns. The Director stated that the interns were paid in order to defray living expenses and, in some cases, to help repay loans. In addition, the Director stated that in his opinion the Hospital could function without too much problem if all interns were to leave. He estimated that, on the average, interns spend about one-half to two-thirds of their time in patient care.

On their income tax return for 1972, Dr. Meek and his wife excluded from their gross income $1,800 of the funds received from the Hospital on the ground that the funds were a scholarship or fellowship grant pursuant to I.R.C. § 117. The Commissioner disallowed the exclusion and assessed an additional tax of $326, plus interest. The Meeks paid the deficiency and, after the Internal Revenue Service denied their claim for a refund, filed a complaint in the district court. The district court granted the government's motion for summary judgment on the grounds that the record was complete and that the facts entitled the government to judgment as a matter of law.

## II. THE APPLICABLE LAW

Section 117[2] of the Internal Revenue Code of 1954, a provision that has its ancestral roots in the exclusion from income of gifts, provides, with certain limitations, for an exclusion from gross income of amounts received as a scholarship or fellowship grant. Individuals who are not candidates for a degree may exclude from each month's income a maximum of $300 of the fellowship funds received from a tax exempt organization. Appellant excluded from his 1972 gross income the maximum allowable.

Although the terms scholarship and fellowship are not defined in the statute, the Treasury Regulations provide that a "fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Treas.Reg. § 1.117–4(c)(1) (1960).[3] In addition, "any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor" cannot be excluded. Treas.Reg. § 1.117–4(c)(2) (1960).

The Supreme Court, in *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), upheld the validity of Treasury Regulation § 1.117–4(c). The Court stated that "the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Id.* at 751, 89 S.Ct. at 1445. Citing the government's brief, the Court further stated that " 'the general idea is the same: 'scholarship' or 'fellowship' does not include arrangements where the recipient receives money and in return provides a *quid pro quo*.' " *Id.* at 758 n.32, 89 S.Ct. at 1449 n.32.

---

2. I.R.C. § 117 provides, in pertinent part:
   (a) General rule.—In the case of an individual, gross income does not include—
   (1) any amount received—
   (A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or
   (B) as a fellowship grant, including the value of contributed services and accommodations; . . . .

   \* \* \* \* \* \*

   (b) Limitations.—

   \* \* \* \* \* \*

   (2) Individuals who are not candidates for degrees.—In the case of an individual who is not a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).
   (A) Conditions for exclusion.—The grantor of the scholarship or fellowship grant is—
   (i) an organization described in section 501(c)(3) which is exempt from tax under section 501(a),

   \* \* \* \* \* \*

   (B) Extent of exclusion.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year . . . .

3. Treasury Regulation § 1.117–4(c) provides:
   (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

   (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.

### III. PROPRIETY OF SUMMARY JUDGMENT

Summary judgment is proper under Rule 56(c) when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of such a genuine issue, and all inferences drawn from the materials it lodges must be viewed in the light most favorable to the opposing party. The trial court may not weigh the evidence when deciding a motion for summary judgment, but must decide a pure question of law. *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 343–44 (9th Cir. 1978). Not surprisingly, the appellant insists that whether his stipend constitutes a fellowship is a question of fact and that to grant the government's motion for summary judgment was improper. Separating law from fact is never easy; but here we believe the government has the better of the argument. The historical facts are undisputed—only the legal consequences under the applicable tax law remain in dispute. The situation is similar to that described in *Estate of Franklin v. C. I. R.*, 544 F.2d 1045, 1047 n.3 (9th Cir. 1976), where it was said:

> In the instant decision, the factual issues were generally undisputed with only the legal implications uncertain. As stated in *Lundgren v. Commissioner*, 376 F.2d 623, 627 (9th Cir. 1967), our duty is to decide 'whether the Tax Court correctly applied the statute to the factual situation found by the Tax Court.'

Summary judgment has been found appropriate in similar situations. *Logan v. United States*, 518 F.2d 143 (6th Cir. 1975); *Parr v. United States*, 469 F.2d 1156 (5th Cir. 1972); *Krupin v. United States*, 439 F.Supp. 440 (E.D.Mo.1977). *But see Leathers v. United States*, 471 F.2d 856 (8th Cir. 1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973).

### IV. THE STIPEND IS NOT A FELLOWSHIP GRANT

The majority of courts which have considered the exclusion from gross income of payments by a hospital to medical interns or residents has held the payments to be compensation for services rendered and not to be the "no-strings" educational grants required by section 117. *Parr v. United States*, 469 F.2d 1156 (5th Cir. 1972); *Hembree v. United States*, 464 F.2d 1262 (4th Cir. 1972); *Rundell v. C. I. R.*, 455 F.2d 639 (5th Cir. 1972); *Wertzberger v. United States*, 441 F.2d 1166 (8th Cir. 1971); *Tobin v. United States*, 323 F.Supp. 239 (S.D.Tex. 1971); *Kwass v. United States*, 319 F.Supp. 186 (E.D.Mich.1970); *Adams v. Commissioner*, 71 T.C. 477 (1978) (and cases cited therein); *Weinberg v. Commissioner*, 64 T.C. 771 (1975). No per se rule exists, however. *Parr v. United States*, 469 F.2d at 1159.

■ Proof of the purposes for which the hospital facilities or program are operated is not controlling. The primary purpose is that for which the payments are made, not the purpose of the grantor. *Parr v. United States*, 469 F.2d at 1157–58; *Krupin v. United States*, 439 F.Supp. at 444.

In determining the compensatory nature of payments, the courts have considered numerous factors, *e. g.*, whether the services performed by the intern were necessary to the operation of the hospital and would have to be performed by others if not done by the intern, *Hembree v. United States*, 464 F.2d at 1264–65; whether the recipient has been provided a number of the fringe benefits customarily received by employees, *Wertzberger v. United States*, 315 F.Supp. 34, 36 (W.D.Mo.), *aff'd* 441 F.2d 1166; whether the intern has signed an employment contract and performs daily services, *see Woddail v. C. I. R.*, 321 F.2d 721 (10th Cir. 1963); whether the intern receives a paid vacation, group health insurance, free laundry service, and is otherwise treated as an employee, *see Hembree v. United States*, 464 F.2d at 1263; whether the intern agrees not to engage in private practice, is paid a stipend unrelated to financial need, and has taxes withheld from his paycheck, *Weinberg v. Commissioner*, 64 T.C. 771.

On the other hand, when the recipient performs no services for the grantor, has no taxes withheld, receives no fringe benefits, performs without direct supervision, and has no present or future obligation to work for the grantor, the payments received for study or research constitute a fellowship. *Krupin v. United States,* 439 F.Supp. 440. Situations exist which fit neither category clearly. Thus, payments were excludable where the hospital was strictly a teaching hospital in which the residents were not required for the provision of patient care, did not spend the majority of their time in patient care, and were closely supervised. *See Leathers v. United States,* 471 F.2d 856 (8th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973). *See Bailey v. Commissioner,* 60 T.C. 447 (1973) (no responsibility for patient care); *Bieberdorf v. Commissioner,* 60 T.C. 114 (1973) (clinical activities constituted 20–25 percent of doctor's time).

In this case, taxpayer-appellant performed services that a doctor would perform and worked as many as 100 hours a week. The Director of Medical Education stated interns spent the majority of their time in patient care. The Hospital did not have as its primary purpose the teaching of interns, and the bills presented to patients included the costs of the interns' services. The Hospital provided to taxpayer-appellant fringe benefits similar to those received by other employees. Taxpayer-appellant signed a contract with the Hospital in which he agreed not to engage in outside work and was required to appear on a regular basis. His stipend did not depend upon financial need. Although the Hospital evidently could continue to provide medical care without the services of the interns, the interns did perform valuable services which, if the interns were excused from performance, would have to be performed by others. Although the Hospital did consider the interns to be student doctors, budgeting payments to them under a service and supply category rather than under a salary heading, the issue, however, is not whether the Hospital considered the interns to be students but whether the payments were made in exchange for services. As the Supreme Court stated in *Bingler v. Johnson, supra* 394 U.S. at 757–58, 89 S.Ct. at 1448–1449 (footnote omitted):

> The thrust of the provision dealing with compensation is that bargained-for payments, given only as a *"quo"* in return for the *quid* of services rendered—whether past, present, or future—should not be excludable from income as "scholarship" funds. That provision clearly covers this case.

Being so instructed, we conclude the district court correctly held that there is no genuine issue as to any material fact and that the government is entitled to a judgment as a matter of law.

Affirmed.