**Steven and Faith FIELD, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

**No. 81–2156.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1982.

Decided June 11, 1982.

Karen Stone Kaplan, Law Student, Thomas F. Geraghty, Chicago, Ill., for petitioners-appellants.

Jo-Ann Horn, John F. Murray, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before STEWART, Justice (Retired)*, PELL, Circuit Judge, and SPRECHER, Circuit Judge.**

STEWART, Justice (Retired).

The sole issue presented in this appeal is whether stipends received by a physician enrolled in a graduate hospital residency program are excludable from gross income as a "fellowship grant" or "scholarship" within the meaning of § 117 of the Internal Revenue Code of 1954. The Tax Court held that the stipends at issue in this case were not excludable under § 117. While the question is one of first impression in this Circuit, the Courts of Appeals of several other Circuits have considered various aspects of the issue and have almost uniformly held that payments to medical residents do not qualify for the fellowship or scholarship exclusion contained in § 117. We agree with this majority position and affirm the judgment of the Tax Court.

I

During the tax years at issue, appellant Dr. Steven D. Field[1] served as a resident in the Graduate Clinical Training Program of the Department of Psychiatry of Evanston Hospital, McGaw Medical Center, in Evanston, Illinois.[2] The satisfactory completion of this psychiatric residency program was necessary to enable Dr. Field, who had previously received his M.D. degree from the University of Illinois Medical School, to gain the certification of the American Board of Psychiatry and Neurology.

Evanston Hospital's psychiatric residency program was divided into three distinct phases. During the first four-month period, Dr. Field was required to do a rotation in Internal Medicine. This period was devoted to the study of general medicine in the classroom, and to its practice in the hospital under the ultimate supervision of a more senior resident and an attending physician.

During its second phase, the program's focus shifted to the study and practice of psychiatry. Dr. Field attended formal lectures and participated in informal discussions with supervisors concerning both psychiatric theory and practice. At the same time, he devoted substantial time to in-patient care, performing a full gamut of medical and psychiatric services in the hospital, and he was assigned twenty-four hour emergency call duty six times each month.

During the final phase of the period at issue, Dr. Field continued to attend classes, but his clinical responsibilities shifted from in-patient care to out-patient service. Dr. Field's emergency responsibilities were reduced during this period to three twenty-four hour segments each month.

Dr. Field received semimonthly payments from Northwestern University. The amount of the stipend paid to Dr. Field was determined solely by his length of service in

* The Honorable Potter Stewart, Justice (Retired), of the Supreme Court of the United States, is sitting by designation.

** Judge Sprecher was present at the argument in this case and at the conference thereafter concurred in the judgment announced today. He was unable to review the opinion because of his illness and subsequent death.

1. Faith Field, the wife of Dr. Steven D. Field, is a party to this action only because joint tax returns were filed for the years in question.

2. Northwestern University Medical School and Evanston Hospital are related institutions and form, in part, the McGaw Medical Center, an Illinois non-profit membership corporation. Northwestern University Medical School was reimbursed by Evanston Hospital for the cost of the stipends that Northwestern University Medical School paid Dr. Field.

Northwestern University is an educational institution within the meaning of § 170(b)(1)(A)(ii) of the Code, and Northwestern University Medical School is a part of Northwestern University. Evanston Hospital qualifies under § 501(c)(3) as an organization that is exempt from tax under § 501(a).

the program. Northwestern University deducted federal and state withholding taxes and FICA taxes from the gross stipend.

In addition to the stipend from Northwestern University, Dr. Field received numerous fringe benefits, including participation in the McGaw Medical Center House Staff Insurance Plan, professional liability insurance, disability insurance, paid sick leave, uniforms and laundry service. He was entitled to fourteen days of paid vacation during his first year in the program and twenty-one days of annual paid vacation thereafter.

Treating the stipend received from the hospital as a "scholarship" or "fellowship grant" within the meaning of § 117 of the Code, Dr. Field excluded these payments from the computation of gross income on his federal income tax returns for 1977 and 1978. The Commissioner assessed additional taxes for these years based on the determination that the stipends did not qualify for the § 117 exclusion. Following a hear-ing, the Tax Court upheld the assessed deficiencies, and Dr. Field brought this appeal.

## II

Section 117(a) [3] of the Internal Revenue Code of 1954 provides that an individual may exclude from the computation of gross income "any amount received as a scholarship ... or as a fellowship grant." Although the terms "scholarship" and "fellowship grant" are not defined in the Code, the Treasury Regulations provide that a "fellowship grant generally means an amount paid to or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Treas.Reg. § 1.117–3(c) (1960). The Treasury Regulations provide, however, that any amount which "represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor" may not be excluded from gross income. Treas.Reg. § 1.117–4(c).[4]

3. Section 117 provides in pertinent part:
SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.
(a) [as amended by Sec. 1901(b)(8)(A), Tax Reform Act of 1976, Pub.L.No.94–455, 90 Stat. 1520] General Rule.—In the case of an individual, gross income does not include—
(1) any amount received—
(A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or
(B) as a fellowship grant, including the value of contributed services and accommodations; and
. . . .
(b) [as amended by Sec. 1901(b)(8)(A) and (c)(3), Tax Reform Act of 1976, supra ] Limitations.—
. . . .
(2) Individuals who are not candidates for degrees.—In the case of an individual who is not a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).
(A) [as amended by Sec. 110(a), Mutual Educational and Cultural Exchange Act of 1961, Pub.L.No.87–256, 75 Stat. 527] Conditions for exclusion.—The grantor of the scholarship or fellowship grant is—
(i) an organization described in section 501(c)(3) which is exempt from tax under section 501(a),

(B) Extent of exclusion.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii).

4. Treas.Reg. § 1.117–4 provides in part:
§ 1.117–4 Items not considered as scholarships or fellowship grants.
The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:
. . . .
(c) Amounts paid as compensation for services or primarily for the benefit of the grantor.
(1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past,

In *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), the Supreme Court sustained the validity of Treasury Regulation § 1.117–4(c) and elaborated further on the correct meaning of the terms "scholarships" and "fellowship grants." The Court described "scholarships" and "fellowship grants" as "relatively disinterested, 'no strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Id.* at 751, 89 S.Ct. at 1445.

Since the Supreme Court's decision in *Bingler* and the announcement therein of the "substantial *quid pro quo*" test, the numerous courts that have considered various aspects of this issue have almost uniformly held that payments made to medical residents do not qualify for the § 117 exclusion. *See, e.g., Cooney v. United States,* 630 F.2d 438 (6th Cir. 1980); *Burstein v. United States,* 622 F.2d 529 (Ct.Cl.1980); *Meek v. United States,* 608 F.2d 368 (9th Cir. 1979); *Parr v. United States,* 469 F.2d 1156 (5th Cir. 1972); *Hembree v. United States,* 464 F.2d 1262 (4th Cir. 1972); *Wertzberger v. United States,* 441 F.2d 1166 (8th Cir. 1971), *aff'g* 315 F.Supp. 34 (W.D.Mo.1970); *Quast v. United States,* 428 F.2d 750 (8th Cir. 1970), *aff'g* 293 F.Supp. 56 (D.C.Minn.1968); *Tobin v. United States,* 323 F.Supp. 239 (S.D.Tex.1970); *Kwass v. United States,* 319 F.Supp. 186 (E.D.Mich. 1970); *Adams v. Commissioner,* 71 T.C. 477 (1978); *see also Medical Resident and Section 117—Time for a Closer Examination,* 25 St. Louis U.L.J. 117, 118 & n.3 (1981); *but cf. Leathers v. United States,* 471 F.2d 856 (8th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973)

(refusing to reverse jury verdict in favor of resident). In applying the *Bingler* test and in refusing to extend the § 117 exclusion to payments made to medical residents, these courts have primarily focused on such factors as the nature of the services performed by the resident, and the compensation and fringe benefit arrangements between the hospital and the resident.

### III

■ Analyzing the facts of the current case in light of *Bingler* and its progeny, we conclude that the Tax Court was correct in holding that the payments from Evanston Hospital to Dr. Field were not a "scholarship" or "fellowship grant" within the meaning of § 117. Evanston Hospital required a substantial *quid pro quo* from Dr. Field in exchange for the stipends. In the initial phase of the residency, Dr. Field interviewed incoming patients, performed physical examinations, recorded patient histories, and diagnosed medical problems. As the program progressed, Dr. Field shouldered significant responsibility for the care of patients first in the hospital and later in the out-patient clinic. He led group therapy sessions, consulted with other doctors on patient treatment and participated in ward meetings. Additionally, Dr. Field was assigned substantial and burdensome emergency call duty.

The residency program's compensation and fringe benefit arrangements are further indicia of the existence of an employer-employee relationship between Evanston Hospital and Dr. Field. The amount of the yearly stipend paid to Dr. Field and to each

present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purposes of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself be considered to destroy the essential character of such amount as a scholarship or fellowship grant.

of the other residents was determined, not by individual financial need, but solely by the resident's length of service. *See Adams v. Commissioner,* 71 T.C. 477, 487 (1978); *Rosenthal v. Commissioner,* 63 T.C. 454, 460 (1975); *Dietz v. Commissioner,* 62 T.C. 578, 586 (1974); *Proskey v. Commissioner,* 51 T.C. 918, 924 (1969). The hospital withheld taxes from the stipend paid to Dr. Field in the same manner as it withheld taxes from all salaried employees. *See Parr v. United States,* 469 F.2d 1156, 1158 & n.5 (5th Cir. 1972); *Adams v. Commissioner, supra,* at 487. In addition, the hospital provided Dr. Field with the full panoply of fringe benefits accorded to employees on the hospital staff, including insurance coverage, paid sick leave and vacation time, and laundered uniforms. *See Burstein v. United States,* 622 F.2d 529, 538 (Ct.Cl.1980); *Parr v. United States, supra,* at 1158 n.5; *Adams v. Commissioner, supra,* at 487; *Rosenthal v. Commissioner, supra,* at 460.

Both in their brief and at oral argument, Dr. Field's counsel argued strenuously that the residency program was intended to provide, and did in fact furnish, invaluable educational training. No one disputes this proposition. As the Tax Court noted in *Proskey v. Commissioner, supra,* at 925, however, the educational benefits derived by a physician from a hospital's residency program cannot alter the analysis of the taxability of stipends which, along with these nonmonetary benefits, compensate the resident for services rendered to the hospital:

> There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for

services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession.

*Id.; see also Burstein v. United States, supra,* at 535.

■ Dr. Field's counsel also argued that, in light of testimony by the Director of the Education Program for Psychiatric Residents to the effect that Evanston Hospital could function without residents, the residents did not provide substantial services to the hospital. In rejecting an identical claim, the Tax Court in *Fisher v. Commissioner,* 56 T.C. 1201 (1971), insightfully explained: "Even if the Center *could* do without residents, it did not do without them; it used their services and it paid for them. Many employees may be dispensable in the sense that their employers could 'operate' without them. But such dispensability hardly renders their salaries noncompensatory." *Id.* at 1215; *see Burstein v. United States, supra,* at 536. Similarly, the mere fact that, in the present case, Evanston Hospital could function without Dr. Field in no way casts doubt on our conclusion that Dr. Field provided substantial, valuable services to the hospital in exchange for the stipends and that such stipends, therefore, constituted neither a "scholarship" nor a "fellowship grant" within the meaning of § 117.[5]

For these reasons, the judgment of the Tax Court is affirmed.

---

**5.** We do not by our decision today adopt a *per se* rule denying the § 117 exclusion to all medical residents who receive stipends from hospitals. There may well be situations in which, based on the nature of the services performed by a resident and the compensation and fringe benefit arrangements between a hospital and a resident, stipends received by a resident qualify for exclusion under § 117. *See, e.g.,* Rev.Rul. 57–560, 1957–2 C.B. 108; Rev.Rul. 58–76, 1958–1 C.B. 56.