THOMAS WILSON PHILLIPS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Phillips v. Commissioner
Docket No. 8264-74.
United States Tax Court
T.C. Memo 1976-67; 1976 Tax Ct. Memo LEXIS 340; 35 T.C.M. (CCH) 293; T.C.M. (RIA) 760067; March 8, 1976, Filed *340 Held, payments received by petitioner as a resident in therapeutic radiology in a hospital operated by the College of Medicine of the University of Florida were compensation for services rendered and were not scholarships or fellowship grants excludable from income under sec. 117(a)(1), I.R.C. 1954. Thomas Wilson Phillips, pro se. Albert L. Sandlin, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: *341 Respondent determined deficiencies in petitioner's income taxes for the years 1971 and 1972 in the amounts of $721.33 and $770.53, respectively. The only issue is whether petitioner is entitled to exclude $3,600 of the income he received as a resident in a hospital operated by the University of Florida School of Medicine in Gainesville, Fla., in each of the years involved as a scholarship or fellowship grant under section 117(a)(1), I.R.C. 1954. FINDINGS OF FACT Petitioner resided in Atlanta, Ga., at the time he filed his petition herein. He filed U.S. Individual Income Tax Returns for the taxable years ended December 31, 1971, and December 31, 1972, with the Internal Revenue Service Center, Chamblee, Ga.
Petitioner graduated from the Medical College of Georgia in 1967 and subsequently served a surgical internship at Erlanger Hospital in Chattanooga, Tenn. Petitioner was licensed to practice medicine in Georgia in 1968, and in California in 1969 while serving in the Medical Corp of the U.S. Navy. Upon leaving the Navy petitioner declined several opportunities to enter the general practice of medicine in California in order to pursue a specialty in therapeutic radiology. *342 On January 1, 1970, [1] petitioner enrolled in a 3-year residency program in therapeutic radiology at the University of Florida School of Medicine in Gainesville, Fla. The program was prescribed by the American Board of Radiology. Petitioner was not a candidate for a degree during the years 1971 and 1972. Therapeutic radiology is the treatment of cancer with various radiations and requires knowledge of physics and radiation biology, courses which were not usually given in medical schools. During his residency in the hospital petitioner's functions and duties included receiving and examining patients, taking patient histories, conducting complete physical examinations, planning and prescribing treatments, and discussing these with a staff physician. The staff physician also examined the patients and made the final decision as to the treatments to be given the patient. Thereafter petitioner followed the course of the treatments while the patient was in the hospital, and also conducted follow-up examination *343 of the patients after the treatments were concluded. Petitioner also attended classroom courses in physics and radiation biology two or three times a week for periods of 6 weeks to 3 months each year. He also researched old files to determine the effect of various types of treatments on various cancer patients. He was not required to make reports on this research or on any other work he did except to the head of the department. There were two staff physicians and five residents in the radiation department while petitioner was there. The patient load was about 50 to 60 patients per day. The staff physicians supervised petitioner and had the ultimate responsibility for the patients. The University of Florida billed patients for services rendered but patients were not specifically billed for services rendered by petitioner. Petitioner did not enter into a written contract with regard to his residency program. He entered the program on the oral invitation of the head of the department in the College of Medicine. Petitioner was paid by the State of Florida. The College of Medicine received grants from the National Institute of Health for research and training in therapeutic radiology *344 but it is not known whether any of the funds were used in paying petitioner. Petitioner had no direct contact with NIH. W-2 forms filed by the State of Florida indicate it paid petitioner as "wages paid subject to withholding" $8,230.23 in 1971 and $10,486.14 in 1972, and withheld Federal income tax on those entire amounts. These represent the entire amounts received by petitioner in those years in connection with his residency program. The State of Florida also paid premiums on malpractice insurance and Blue Cross-Blue Shield health benefits for petitioner, and also travel expense for attending certain meetings. Petitioner was also entitled to a 2-week vacation each year. On his income tax returns for each of the years 1971 and 1972 petitioner deducted as employee business expense $3,600 with the explanation "IRS Code 117, Letter Attached." Attached to each return was a statement signed by the Chairman, Division of Radiation Therapy University of Florida College of Medicine, certifying that petitioner was a full-time post-doctoral trainee during that year and the "stipend received was for subsistence and not for services rendered." The chairman was not called as a witness. *345 In the notice of deficiency, respondent determined that the $3,600 paid to petitioner cannot be excluded from income as a scholarship or fellowship grant because it did not meet the requirements of the Federal tax law. ULTIMATE FINDING OF FACT The payments received by petitioner from the State of Florida in 1971 and 1972 were compensation for services rendered and were not scholarships or fellowship grants. OPINION This is another of the long line of cases in which post-graduate doctors have sought to exclude from income under section 117(a)(1) $3,600 of the pay they receive in intern and residency programs in various hospitals throughout the country. Only rarely have the taxpayer-doctors been able to convince the courts that they qualified for the exclusion; but hope seems to spring eternal and the doctors continue to come to court with the argument that the facts and circumstances involved in their cases are sufficiently distinguishable from the prior cases to justify the exclusion. See Steven Michael Weinberg,64 T.C. 771, 776 (1975), and cases cited therein. This petitioner makes a similar argument but, while we have no doubt of his sincerity, we find *346 it unconvincing from a legal standpoint. Section 61 of the Code provides that unless otherwise excluded by law, gross income means all income from whatever source derived, including, but not limited to, compensation for services. Subject to certain limitations and qualifications, section 117(a)(1) allows an exclusion from gross income of any amount received as a scholarship at an educational institution or as a fellowship grant. If the recipient is not a candidate for a degree, the exclusion is limited by section 117(b)(2)(B) to $300 per month not to exceed 36 months. Section 1.117-4(c), Income Tax Regs., which was upheld by the Supreme Court in Bingler v. Johnson,394 U.S. 741 (1969), provides in part that any amounts paid or allowed to an individual to enable him to pursue studies or research shall not be considered to be an amount received as a scholarship or fellowship grant if such amount represents either compensation for past, present, or future services or represents payment for services which are subject to the direction or supervision of the grantor. In Bingler v. Johnson,supra, the Supreme Court stated that the definitions contained *347 in the regulations comport with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The test to be applied under the case law and the regulations is whether the primary purpose for making the payments to the taxpayer was to educate and train him or to compensate him for services rendered. Steven Michael Weinberg,supra;Robert W. Carroll,60 T.C. 96 (1973), and cases cited therein; sec. 1.117-4(c)(2), Income Tax Regs. This is a question of fact. The primary purpose test refers to the primary purpose of the payment itself. Parr v. United States,469 F.2d 1156 (C.A. 5, 1972). We have found from the facts in this case that the primary purpose of the payments to petitioner were for services rendered rather than to educate or train him. The payments may have made it possible for petitioner to educate and train himself in therapeutic radiology through the residency program but we are convinced that he would not have been paid had he not rendered the services and the payments *348 were compensation for those services. Some of the reasons for our conclusion are as follows. The payments received by petitioner were obviously related to his level of training and competency in his field and not to his economic status. The payments were increased from $8,230.23 in 1971 to $10,486.14 in 1972 as he was given more responsibility in the treatment and care of patients. The State of Florida reported the payments as wages and withheld Federal income tax on the entire amounts paid to petitioner without allowance for any "fellowship" exclusion. The hospital provided valuable fringe benefits to petitioner, such as malpractice insurance, health insurance, vacations, and travel allowances for attending meetings. These all have the characteristics of an employer-employee relationship and compensation for services rendered, whereas we have found none of the characteristics of a fellowship grant. Petitioner was required to follow a daily work schedule. There is no indication that his time was his own to pursue such research and education as he might choose. There is no evidence that he received the payments because of financial need or because of exceptional merit displayed *349 in his prior academic work. Aloysius J. Proskey,51 T.C. 918, 924 (1969). Compare Robert Henry Steiman,56 T.C. 1350, 1355 (1971). Petitioner argues on brief that his case is distinguishable from the Weinberg case in the following particulars. 1. He was licensed to practice before entering the training program; the training was not a prerequisite for licensure. This may be a factual distinction but it does not help petitioner. An experienced physician would be more helpful to the hospital in the care of patients than would the intern in the Weinberg case. The difference in the rate of compensation suggest this. Weinberg was paid approximately $4,200 his first year and $5,400 his second year, while petitioner was paid over $8,000 and $10,000. 2. Attached to his returns was a statement by the head of the Department of Radiation Therapy that he was paid a stipend for subsistence and not a fee for services. This might have been more convincing had the head of the department been called as a witness. Petitioner also argues that the two staff physicians were capable of handling the case load in the department and therefore his presence was *350 not necessary for the functioning of the department. This same argument was made in Weinberg and other cases in which we observed that while the services of interns and residents may not have been necessary, we were convinced that the hospitals could not have operated as well without their services. See Frederick Fisher,56 T.C. 1201 (1971). We are likewise convinced here that the functions performed as a resident by petitioner, an experienced physician, viewed in the light of his own testimony, were very valuable to the successful operations of the hospital. Perhaps the hospital could have gotten along with fewer residents but it chose not to do so. 3. Petitioner points out that he was under no contractual arrangement with either the University of Florida or NIH for future employment. Neither was Weinberg so contracted. And petitioner has given us no evidence that he was receiving funds from an NIH grant, which he claims was for educational purposes only. 4. Petitioner states that since he received monetary aid from the Veterans' Administration they recognized the program as a training program. First, there is no evidence that petitioner received aid from *351 the Veterans' Administration and, if so, what it was for. Further, the fact that the program might have qualified as a training program with the Veterans' Administration does not prove that petitioner was being paid for training. 5. Petitioner contends that his case is distinguishable from Weinberg because he was not required to stay at the hospital and was seldom calledd at home. All this indicates is that petitioner and Weinberg were performing services in different fields of medicine under different rules and regulations. Petitioner does not suggest that the staff physicians in the Radiation Therapy Department were required to stay at the hospital or were on call any more than he was. 6. Finally, petitioner argues that radiation therapy is a relatively new specialty involving one of the main treatments of cancer and that for a doctor to become qualified in this field he must receive training and must study physics and mathematics of radiation therapy which are not available in medical schools, and that much of the treatments are experimental in nature. We recognize that there may be a great need in this country for more fully trained radiation therapists and that petitioner *352 was getting such training while he worked. But, as pointed out in Aloysius J. Proskey,supra at 925, "Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession." The sinequanon of this issue is whether petitioner was paid to work or paid to study. We find he was paid to work. We find that the facts in this case do not distinguish it in any material respect from Weinberg, the cases cited therein, and the many other cases which have held that stipends paid to medical interns and residents by hospitals do not qualify for the exclusion provided by section 117, and that respondent did not err in this case in disallowing the claimed exclusion. Decision will be entered for the respondent.
Footnotes
1. There is some confusion in the record as to whether petitioner started this residency program Jan. 1, 1970, or Jan. 1, 1971, but this would make no difference in our decision.↩