ROBERT S. CHANCELLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chancellor v. Commissioner
Docket No. 3713-75
United States Tax Court
T.C. Memo 1976-385; 1976 Tax Ct. Memo LEXIS 17; 35 T.C.M. (CCH) 1740; T.C.M. (RIA) 760385; December 16, 1976, Filed *17 Held, no part of the amount received by petitioner as an intern or resident is excludable as a scholarship or fellowship under sec. 117. Robert S. Chancellor, pro se. Alan R. Herson, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioner's Federal income tax liability for the calendar year 1972 in the amount of $758. The sole issue for decision is whether petitioner is entitled to exclude a portion of the amount he received as a medical intern and resident pursuant to section 117, I.R.C. 1954. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner resided in Los *18 Angeles, California at the time he filed his petition herein. Petitioner filed his 1972 Federal income tax return on the cash basis of accounting with the Fresno Service Center. In June, 1971, petitioner received a Doctor of Medicine degree from the University of Texas and in July, 1971 commenced a 1-year internship at the University of California at Los Angeles Center for Health Sciences (hereinafter UCLA or the hospital). [1] During the first 6 months of 1972, as an intern, petitioner's duties consisted of: (1) performing initial patient interviews and making diagnoses; (2) assisting in and performing surgery; (3) making pre and post operative patient rounds; and (4) instructing and evaluating the work of medical students. Petitioner performed all but the last of such functions under the supervision of permanent staff members or advanced residents. On July 1, 1972 petitioner began the first of a 4 year residence program [2] in ear, nose and throat. During the last 6 months of *19 1972, as a resident, petitioner's duties consisted of: (1) serving in the emergency room with advanced residents where he treated minor injuries and diagnosed and referred more serious cases; and (2) serving 3 months at the San Bernardino County General Hospital. All UCLA residents serving at that hospital were paid directly by UCLA. UCLA hospital is a teaching hospital, admitting patients largely based upon their potential teaching value. Approximately two-thirds of the patients in the hospital are the private patients of UCLA professors. Its post-graduate program is designed to further the education of interns and residents who are selected on the basis of academic achievement, among other criteria. The hospital does not accord residents and interns the full benefit package accorded other staff members.However, petitioner was required to be at the hsopital during his scheduled hours and was not permitted to maintain an outside practice. Petitioner earned vacation leave during his tenure at the hospital. Petitioner, in 1972, earned $9,875 as an intern and resident. [3]UCLA withheld $1,619.61 of this *20 amount as income taxes. On his 1972 income tax return petitioner excluded $3,600 of these payments from gross income. Respondent determined that such exclusion was improper. OPINION Section 117[4] permits an exclusion from gross income of amounts received by an individual as a scholarship or a fellowship grant. In the case of a taxpayer who is not a candidate for a degree, section 117(b)(3)(B) limits the exclusion "to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year." However, a precondition to the applicability of this limitation is a finding that the amounts received by petitioner were, in the first instance, a scholarship or fellowship. Elmer L. Reese, Jr.,45 T.C. 407 (1966), affd. per curiam 373 F. 2d 742 (4th Cir. 1967). After a careful review of the entire record we conclude that they were not. *21 The terms scholarship or fellowship are not defined in the Code. However, section 1.117-3(c), Income Tax Regs., defines a fellowship grant as an amount "paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." In further explication, section 1.117-4(c), [5] Income Tax Regs., provides that these terms do not embrace payments which either represent compensation for services or enable the individual to pursue studies primarily for the benefit of the grantor. This regulation was upheld in Bingler v. Johnson,394 U.S. 741 (1969), wherein the Supreme Court, at 751, described the characteristics of a scholarship or fellowship grant as follows: Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants with no requirement of any substantial quidproquo from the recipients. Thus, for the amounts received by petitioner to qualify as a scholarship or fellowship grant he must deomstrate that the primary purpose of the payments was to further *22 his education and training rather than to compensate him for services. Elmer L. Reese, Jr.,supra. This he has failed to do. *23 Petitioner argues that the payments involved herein cannot realistically be considered compensation for services. He states that an intern or resident could easily earn more money as a general practitioner and has but one objective in taking such a position, the enhancement of his medical skills. In this connection he contends that the director of his program at UCLA considered it to be primarily educational in nature and that the hospital, in the director's opinion, could function without interns and residents. Finally, petitioner points to the fact that many graduate students are entitled to the exclusion and makes the equitable appeal that, if some payments received for activities that are beneficial in the educational sense are excludable, all should be. To the contrary we think it clear that the payments involved herein represented compensation for services. Petitioner worked long hours performing duties requiring considerable skill and training. The benefit to UCLA is both manifest and substantial. Furthermore the amount of the payments received by petitioner bore no relationship to his financial need. Rather, they were based upon the term of service fulfilled by petitioner. *24 Aloysius J. Proskey,51 T.C. 918 (1969); Steven Michael Weinberg,64 T.C. 771 (1975), Parr v. United States,469 F. 2d 1156 (5th Cir. 1972). Although not itself determinative the absence of evidence that the payments were awarded to petitioner for academic achievement indicates that they were based on the value of his services to UCLA. Moreover, our conclusion is supported by other facts appearing in the record. Petitioner, unlike most scholarship students, was required to be at the hospital at specified times to perform specified duties and was not free to come and go as he pleased. UCLA also extracted from petitioner his right to engage in an outside medical practice even after he became a licensed physician. Finally, the payments were subject to withholding and petitioner through the performance of his duties earned vacation leave. Steven Michael Weinberg,supra.
At trial, petitioner, in an effort to show his services had little or no value to UCLA, introduced a letter from the director of ULCA which reads in pertinent part as follows: The full-time teachers of medicine who maintain offices within *25 the UCLA Health Sciences Center and are available on a regular daily basis for patient care are in sufficient number so that they could care for all the patients for whom we provide medical services without the presence of physicians in training if this were necessary. Obviously, a substantial reorganization of priorities and distribution of time of the faculty would be required, but the faculty is present and is capable of taking care of their patients without the participation of physicians in training. We do not find this convincing in light of the extensive services performed by interns and residents. Moreover, even if the hospital could operate without interns or residents, it is doubtful whether it could do so as efficiently as it could with their assistance. Further, as we stated in Frederick Fisher,56 T.C. 1201 (1971), at 1215: More fundamentally, even if the Center could do without residents, it did not do without them; it used their services, and it paid for them. Many employees may be dispensable in the sense that their employers could "operate" without them. But such dispensability hardly renders their salaries noncompensatory. Petitioner *26 has also cited for our consideration the case of Leathers v. United States,471 F. 2d 856 (8th Cir. 1972), cert. den. 412 U.S. 932 (1973). In that case the Circuit Court characterized the evidence as conflicting and refused to reverse the jury verdicts on the ground that they were not clearly erroneous. Hence, we find petitioner's reliance thereon to be misplaced. We recognize that the payments were beneficial in enabling petitioner to further his education both by helping to defray expenses and by providing him with a valuable learning experience. This dual benefit is not inconsistent with our finding that the payments represented compensation for services. However, as we said in Alloysius J. Proskey,supra at 925: There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship *27 grant, merely because the recipient is learning a trade, business, or profession. Whatever training petitioner received during the years of his residency--and we do not deny that it was substantial--was merely "incidental to and for the purpose of facilitating the raisond'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn,34 T.C. 64, 73 (1960) * * *. Finally, petitioner's contention that his work at UCLA was as educational as other programs in which the recipients qualify for the section 117 exclusion is without merit. The short answer is that while other individuals were paid to study, petitioner was paid to work. Stephen L. Zolnay,49 T.C. 389 (1968).
In view of the foregoing. Decision will be entered under Rule 155. Footnotes
1. In order to become a licensed physician in California one must serve 1 year as an intern. no such requirement existed under the State law of Texas at the time petitioner received his degree.↩
2. Petitioner was not a degree candidate during his tenure at UCLA.↩
3. The salary of interns and residents was based on years of service and not financial need.↩
4. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS, (a) General Rule.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations * * *.↩
5. (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of sec. 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph.