STEPHEN AND PHYLLIS BAER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baer v. Commissioner
Docket No. 8141-76.
United States Tax Court
T.C. Memo 1977-374; 1977 Tax Ct. Memo LEXIS 60; 36 T.C.M. (CCH) 1524; T.C.M. (RIA) 770374; October 31, 1977, Filed Stephen and Phyllis Baer, pro se. John O. Tannenbaum, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the joint Federal income taxes of Stephen and Phyllis Baer in the amounts of $2,487.24 and $2,262.97 for 1973 and 1974, respectively. The issues for decision are as follows: 1. Whether petitioners, who each served as interns at Hahnemann Hospital from June 21, 1972, to June 20, 1973, and as resident physicians at other separate hospitals during the remainder of 1973 and all of 1974, are *61 entitled to exclude from gross income under section 117, [1]/ as scholarships or fellowship grants, the payments which they received from such hospitals during the years in controversy; 2. Whether petitioners are entitled to a moving expense deduction under section 217 for 1973; 3. Whether petitioners are entitled to child care expense deductions for 1973 and 1974. FINDINGS OF FACT At the time they filed their petition, petitioners Stephen and Phyllis Baer were legal residents of Quincy, Massachusetts. They filed their joint 1973 and 1974 income tax returns with the Director, Internal Revenue Service Center, Andover, Massachusetts. In June 1972, both petitioners were graduated from Hahnemann Medical College, Philadelphia, Pennsylvania. On June 21, 1973, they both commenced one-year internship programs at Hahnemann Hospital in Philadelphia and completed such programs on June 20, 1973. Prior to entering the internship program, petitioners each executed a contract with Hahnemann Hospital in which they agreed to serve as interns for one year. *62 Under the terms of these contracts, petitioners were each paid a "salary" of $9,500, provided with living quarters, furnished uniforms, and covered by medical malpractice insurance. They were each entitled to fully paid health insurance policies and a one-week vacation. In return, they obligated themselves to perform satisfactorily and to the best of their abilities the customary services of an intern. Petitioners' year at Hahnemann Hospital was divided into segments of one or two months duration referred to as "rotations." Petitioners took rotations in rheumatology, general medicine, hematology, oncology, and nephrology. Petitioners were required to be on duty from 8:00 or 8:30 a.m. to 4:30 or 5:00 p.m. and every fourth or fifth night from 5:00 p.m. until the following morning. They had a 24-hour duty period one weekend each month. As interns at Hahnemann Hospital, petitioners were required to take the patients' medical histories, assist in making diagnoses, administering tests, and prescribing and administering medications. Upon completion of his internship, petitioner Stephen Baer (hereinafter Stephen) applied for and was accepted into a four-year Residency Training Program *63 in Obstetrics and Gynecology at Beth Israel Hospital in Boston and was appointed, jointly, a resident at Beth Israel Hospital and a Clinical Fellow at Harvard Medical School. This program commenced on July 1, 1973, and was continuing on the date of the trial on May 24, 1977. For his participation in this residency program, Stephen received for his services $11,200 for the period July 1, 1973, to June 30, 1974, $13,700 for the period July 1, 1973, to June 30, 1974, and $13,700 for the period July 1, 1974, to June 30, 1975. In addition he received group term life insurance of $15,000, uniforms, medical malpractice insurance, right to a partially paid health or medical insurance policy, and paid sick, military, and vacation leave. He participated in rotations of obstetrics, gynecology, and clinics, and an elective rotation. During these rotations, Stephen was required to be on duty during specified hours six days a week. In obstetrics, he took patients' medical histories, examined patients, and assisted in deliveries. In gynecology, his hours were 7:30 a.m. to 5:00 p.m. five days a week and night duty approximately every fourth night; he took patients' histories, made diagnoses, *64 and assisted in surgery. In the clinical area, his hours, in general, were 7:30 a.m. to 5:00 p.m. daily, and he handled mainly outpatients. His responsibilities increased with his experience. Upon completing her internship, petitioner Phyllis Baer (hereinafter Phyllis) was accepted into a residency program in internal medicine at Carney Hospital, Boston, and was appointed jointly a resident in that hospital and a Fellow in Internal Medicine at the Boston University School of Medicine. She served as a resident from July 1, 1973, to June 30, 1975. For her first year of service, she received $10,600 and for her second $13,700. She was paid twice a month. While serving as a resident physician, Phyllis spent rotations in nephrology, hematology, endocrinology, and general medicine, and in the coronary care, intensive care, respiratory care, and service units. In general, she was required to be at the hospital from 8:00 a.m. to 5:00 p.m. five days a week and worked about every fourth night. Her time was devoted, in the main, to patient care. Petitioners incurred expenses of $1,011.34 in 1973 in moving from Pennsylvania to Massachusetts to accept the medical internships. They *65 incurred expenses in the amount of $2,640 and $2,220.20 in 1973 and 1974, respectively, for the care of their dependent, minor children. OPINION Section 117(a) excludes from gross income amounts received as a "scholarship" or "fellowship grant." However, those terms do not include amounts representing "compensation for past, present, or future employment services." Section 1.117-4(c), Income Tax Regs. Such terms include only payments "made primarily for the purpose of furthering the education of the recipient * * *." Turem v. Commissioner,54 T.C. 1494, 1505 (1970). Stated another way, the statutory terms refer to no-strings-attached educational grants with no requirement of a substantial consideration from the recipient. Bingler v. Johnson,394 U.S. 741, 757 (1969). In the light of the facts set forth in our Findings, there is no merit in petitioners' claim that their salaries during the years in controversy were scholarships or fellowship grants. They both worked long hours carrying on the business activities of their respective employer-hospitals, taking patient histories, making diagnoses, developing medical, surgical or other treatment *66 programs, and performing surgery or obstetrical deliveries as needed. They had regularly assigned hours of duty during which they were expected to work in order to permit the hospital to function. They were employed and paid to perform those services. Such services obviously exceeded the incidental duties compatible with characterizing a stipend as a scholarship or fellowship. Parr v. United States,469 F.2d 1156, 1158 (5th Cir. 1972); Hembree v. United States,464 F.2d 1262, 1264, 1265 (4th Cir. 1972). Their contracts of employment referred to their compensation as a salary. In addition they received fringe benefits characteristic of employment compensation, such as group life insurance, part payment of hospital insurance, sick leave, military leave, and vacation leave. These salary payments were not educational grants. They were taxable compensation for services rendered by petitioners. Respondent concedes that, if petitioners are not entitled to the claimed gross income exclusions, petitioners are entitled to the disputed moving expense and child care expense deductions. To reflect our holding that petitioners' salary payments are fully *67 taxable and respondent's concession as to the claimed deductions, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.