JOHN S. D'ACONTI and DIANE C. D'ACONTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
D'Aconti v. Commissioner
Docket No. 3927-77.
United States Tax Court
T.C. Memo 1981-359; 1981 Tax Ct. Memo LEXIS 384; 42 T.C.M. (CCH) 369; T.C.M. (RIA) 81359; July 13, 1981. John S. D'Aconti, pro se. James F. Kearney, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1974 in the amount of $ 322. The only issue is whether or not any part of the payments received by a medical intern was excludable from gross income as a scholarship or fellowship grant under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing their petition in this case, petitioners resided in Bloomfield, *385 New Jersey. They had timely filed a joint Federal income tax return for the taxable year 1974. Petitioner Diane C. D'Aconti is a party to this case solely by virtue of having filed a joint return with her husband, and the term petitioner will hereinafter refer to petitioner John S. D'Aconti. Petitioner attended medical school at the Chicago College of Osteopathic Medicine in Chicago, Illinois. Thereafter he applied to and was accepted by St. Michael's Medical Center, Newark, New Jersey (hereinafter hospital) for an internship in internal medicine. The hospital was a teaching hospital whose dual function was patient care and training of interns and residents. Petitioner entered into an agreement with the hospital, entitled "Internship or Resident Agreement," that provided for a salary of $ 11,599 per year, laundry and uniforms, two-weeks paid vacation, professional liability insurance, and hospitalization insurance for petitioner and his family. The hospitalization coverage was the same as that provided for nurses and other employees of the hospital. Under the terms of the agreement, the hospital was to provide a suitable environment for medical education and a training program *386 that met the standards for an approved internship and residency prepared by the Council on Medical Education of the American Medical Association. Petitioner, in turn, agreed to perform satisfactorily and to the best of his ability the customary services of internship, to conform to hospital policies, procedures, and regulations governing interns, and not to engage in any outside remunerative work. A clause in the agreement provided that "[a]ny moonlighting negates this contract." The hospital's payments to its interns and residents were not based on financial need or hardship and were not based on scholastic achievement. Interns received $ 500 less than first-year residents and $ 1,000 less than second-year residents. Normally interns are not licensed physicians in New Jersey, and they usually obtain their license at the end of their internship. Most of the residents are licensed physicians or at least eligible to be licensed. Under New Jersey law, any order signed by an intern or an unlicensed physician has to be signed by a licensed physician within 24 hours. At the time involved in this case, the hospital had 93 staff members (licensed physicians), about 50 residents, and *387 about 12-14 interns. Two residents and two interns were assigned to each floor of the hospital. Satisfactory completion of his internship was a prerequisite to petitioner's eventual licensing as a physician. During his internship, petitioner spent long hours at the hospital and periodically remained at the hospital overnight. He took patient histories, examined patients, made diagnoses and proposed medications or treatments, worked in the emergency room, and accompanied staff physicians or attending private physicians on their rounds. All medical services performed by petitioner during his internship were subject to the direction, supervision, and control of hospital staff doctors or private attending physicians. The Director of Medical Education at the hospital recognized the dual patient-care and teaching roles of the intern program and agreed that while the hospital could function without interns it would not have functioned as efficiently without their services. The presence of the interns upgraded the level of patient care at the hospital. During the period here involved, July 1 to December 31, 1974, petitioner was not a candidate for a degree. During this first six *388 months of his internship he was paid $ 5,734.12 by the hospital. From this amount the hospital withheld Federal income taxes and FICA taxes. On his tax return for 1974, petitioner excluded from his gross income $ 1,800 of that amount as a scholarship or fellowship grant under section 117. Respondent disallowed the exclusion. OPINION Section 117(a) excludes from gross income amounts received as a "scholarship" or "fellowship grant." The terms are not defined in the statute, but the regulations define them as amounts paid to an individual to enable him to pursue his studies or research. The regulations also provide that these terms do not include "compensation for past, present, or future employment services or * * * payment for services which are subject to the direction or supervision of the grantor." Section 1.117-4(c)(1), Income Tax Regs. The Supreme Court has upheld those regulations, holding that they comport "with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirements of any substantial quidproquo from the recipients." Bingler v. Johnson, 394 U.S. 741, 751 (1969). *389 This case is not factually distinguishable from the long unbroken line of cases involving interns and residents who perform valuable services for hospitals while receiving their training in their specialties. In all of those cases, we have held that the payments received from the hospitals constitute compensation for services and are not excludable as fellowship grants. Inglesias v. Commissioner, 76 T.C.     (June 25, 1981); Adams v. Commissioner, 71 T.C. 477 (1978); Weinberg v. Commissioner, 64 T.C. 771 (1975); Rosenthal v. Commissioner, 63 T.C. 454 (1975); Dietz v. Commissioner, 62 T.C. 578 (1974); Fisher v. Commissioner, 56 T.C. 1201 (1971); Anderson v. Commissioner, 54 T.C. 1547 (1970); Proskey v. Commissioner, 51 T.C. 918 (1969). Other courts have reached the same result and have declined to try to separate out some portion of the payments for educational activities as opposed to services. Burstein v. United States, 622 F. 2d 529 (Ct. Cl. 1980); Parr v. United States, 469 F. 2d 1156 (5th Cir. 1972); Hembree v. United States, 464 F. 2d 1262 (4th Cir. 1972). *390 This is just a sampling of the many cases that the courts have handed down in this mich-litigated area, but petitioner, like so many other interns or residents, still asks for a different result in his case. Petitioner's internship agreement was a formal contract whereby he agreed to perform the customary services of internship as directed. Also, petitioner was prohibited from engaging in any outside remunerative work or "moonlighting." "A disinterested 'no-strings attached' motive by the * * * [hospital] cannot be inferred from these arrangements." Weinberg v. Commissioner, supra, at 777. The payments made to petitioner were unlike those received in a scholarship or fellowship grant. They were not based on financial need or on scholastic achievement. See Dietz v. Commissioner, supra, at 586; Weinberg b. Commissioner, supra, at 777; Proskey v. Commissioner, supra, at 924. The payments indeed had the characteristics of compensation. Federal income taxes and FICA taxes were withheld from petitioner's wages. Parr v. United States, supra, at 1158; Proskey v. Commissioner, supra, at 924. *391 Petitioner also received a two-week paid vacation and hospitalization insurance for himself and his family. "These fringe benefits are characteristic of an employer-employee relationship." Weinberg v. Commissioner, supra, at 778; Rosenthal v. Commissioner, supra, at 460; Anderson v. Commissioner, supra, at 1552. Petitioner places great emphasis on the fact that he worked under the direction, supervision, and control of a licensed attending doctor or staff doctor. Petitioner also points out that much of the work he performed in the hospital was duplicated by others and, therefore, served only to educate and inform him. Therefore, petitioner would conclude that his activities as an intern did not constitute services rendered for the benefit of the hospital that otherwise would have been done by someone else. Petitioner also draws a distinction between an intern and a resident, arguing that the resident performs more duties comparable to those performed by a practicing physician. That is a distinction without a difference. Despite petitioner's argument, it is evident that the interns indeed reduced the doctors' workload *392 and their assistance served to upgrade the level of patient care at the hospital. Indeed, even if the hospital could have functioned without petitioner's services, his activities were helpful and beneficial to the hospital, and the hospital did not chose to do without his services. As stated in Fisher v. Commissioner, supra, at 1215: More fundamentally, even if the Center could do without residents, it did not do without them; it used their services, and it paid for them. Many employees may be dispensable in the sense that their employers could "operate" without them. But such dispensability hardly renders their salaries noncompensatory. [Emphasis in original.] While petitioner in his first six months of his internship may have honestly felt that his services were of little or no value to the hospital, his situation was really no different than that of any new employee who is just learning the job. The level of supervision and control exercised over petitioner is not unlike that a traditional compensated employment. Virtually every employee, in any field of employment, is subject to some supervision and control. Other employees at the hospital, *393 such as nurses, are subject to similar supervision and control. Yet payments for such services are unquestionably compensation. Indeed, the degree of supervision and control imposed upon petitioner's work may have increased its benefit to the hospital. See Fisher v. Commissioner, supra, at 1212; Turem v. Commissioner, 54 T.C. 1494, 1505 (1970). The facts of the present case suggest no possible reason for reaching a different result in this case or for treating petitioner any differently than we have treated other interns or residents similarly situated. We hold that the payments made to petitioner were for services rendered and were not excludable as a scholarship or fellowship grant. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year here involved.↩