MICHAEL E. AND SARA S. NEWMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Newman v. Commissioner
Docket No. 34414-86.
United States Tax Court
T.C. Memo 1988-147; 1988 Tax Ct. Memo LEXIS 175; 55 T.C.M. (CCH) 573; T.C.M. (RIA) 88147; April 11, 1988. James E. Cox, for the petitioners. John F. Driscoll, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1982
$ 1,245.29
1983
2,179.00
After concessions by petitioners, the sole issue for decision is whether amounts received by petitioner Michael E. Newman during the years at issue constitute scholarships excludable from income under section 117(a). [1]
FINDINGS OF FACT
*176 Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Auburn, Alabama, when they filed their petition herein. They filed joint Federal income tax returns for the years at issue. Michael E. Newman ("petitioner") received a Doctor of Veterinary Medicine degrees from Auburn University in 1980. From 1980 through June of 1982, he engaged in the private practice of veterinary medicine. The Doctor of Veterinary Medicine degree obtained by petitioner in 1980 qualified him to perform surgery on animals, and he performed surgery on small animals while he was in private practice. In late 1981 or early 1982, petitioner applied for acceptance into a combined residency/graduate program (the "Program") at Auburn University. The function of the Program was to allow petitioner to complete a surgical residency and simultaneously earn a master's degree in veterinary surgery. Auburn University accepted petitioner into the Program, and appointed him a resident on its faculty effective July 1, 1982. As a resident, petitioner was a temporary member of Auburn University's *177 faculty. He was paid approximately $ 15,000 a year and received other benefits including paid vacation and sick leave, hospitalization insurance, and coverage under a retirement plan. Students working toward a master's degree who did not agree to perform a residency did not receive any pay or benefits. Petitioner began serving his residency at Auburn University's Small Animal Surgery Clinic (the "Clinic") on July 1, 1982, and began taking classes for his master's degree in September of 1982. Petitioner was expected to be either in class or on the premises of the Clinic from 8 a.m. to 5 p.m. daily. He routinely spent 12 to 13 hours a day attending class and performing his duties as a resident, and was on emergency call duty every third or fourth week. He studied at night while off duty. During the residency, he was issued a beeper so that he could be summoned back to the Clinic for emergencies. People from all over the United States brought animals to the Clinic for treatment, and paid the Clinic for the medical services it provided. Petitioner's job as a resident was to assist the staff veterinarians in receiving, diagnosing, prognosing, and treating animals. He was responsible *178 for taking patient histories, reasearching his cases, making patient rounds, performing surgery, and performing pre and post operative patient care. Owners of animals treated at the Clinic were charged for the services petitioner performed. In addition, petitioner was assigned teaching responsibilities during the residency. Petitioner's work was closely supervised at the beginning of his residency, but the amount of supervision he received decreased as he progressed through the residency. After he finished the Program, petitioner was hired to work at the clinic for a few months. Petitioner deducted $ 7,609.50 and $ 15,219 of the amounts he received from Auburn University in 1982 and 1983 respectively from his Federal income tax returns for those years. Respondent audited petitioner's Federal income tax returns for the years at issue and determined that petitioner was not allowed to deduct those amounts. Respondent's stated ground for disallowing the deductions was that the amounts had been paid to petitioner as compensation for services performed primarily for the benefit of Auburn University. OPINION The sole issue for decision is whether the amounts disallowed by respondent *179 are excludable from income under section 117(a). Petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Scholarships and fellowship grants are excludable from income under section 117(a). Section 1.117-4(c)(1), Income Tax Regs., provides, however, that if any "amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor," it does not qualify for exclusion under section 117. In Bingler v. Johnson,394 U.S. 741, 751 (1969), the Supreme Court upheld the validity of that regulation, stating that it is consistent "with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." See also Parr v. United States,469 F.2d 1156, 1157-1159 (5th Cir. 1972). Based on our review of the entire record in this case, we are unable to conclude that the amounts at issue were not paid to petitioner as compensation for his services. Our findings *180 of fact recount the duties that petitioner performed and the responsibilities that he assumed as a resident at the Clinic. Our findings of fact also establish that the Clinic's clients paid for the work petitioner performed. The fact that petitioner was required to be a resident in order to receive the amounts at issue indicates that the amounts were paid to him as a quid pro quo for the services he rendered. Petitioner argues that the services he performed could have been performed by other veterinarians on the Clinic's staff, and that the fact that other veterinarians could have performed the services proves that the amounts at issue were not paid for his services. Even if we were to accept that the Clinic could have done without petitioner's services, that fact would not establish that the amounts paid to petitioner were noncompensatory. Regardless of whether the Clinic could have done without petitioner's services, the fact remains that it did not do without them; it used his services. As stated in Fisher v. Commissioner,56 T.C. 1201, 1215 (1971), "Many employees may be dispensable in the sense that their employers could 'operate' without them. But such *181 dispensability hardly renders their salaries noncompensatory." Petitioner next argues that the degree of supervision and control exercised over his work indicates that the amounts at issue are not compensation. We disagree. This Court has recognized that virtually all employees who receive compensation for services are subject to some degree of supervision and control, and that payments for their services are nevertheless compensation. Weinberg v. Commissioner,64 T.C. 771, 779 (1975). While we recognize that the supervision that petitioner received provided him with valuable training, that fact does not establish that the amounts at issue were not compensation to him. As we stated in Proskey v. Commissioner,51 T.C. 918, 925 (1969), "virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession." Although an administrator at Auburn University testified that petitioner was a burden *182 to the Clinic's staff, we found his testimony to be unpersuasive. The fact that petitioner was hired to remain at the Clinic and work for a few months after he finished the Program indicates to us that he was performing valuable services for the Clinic. In sum, we hold that petitioner has failed to prove the amounts at issue are excludable from income under section 117(a). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩